5 P.3d 759 (2000)
101 Wash.App. 662
In re the Personal Restraint Petition of Douglas BRATZ, Petitioner.
No. 24514-1-II.
Court of Appeals of Washington, Division 2.
August 4, 2000.
*760 Jean Ann O'Loughlin, Tacoma, for Appellant.
Kathleen Proctor, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
HOUGHTON, J.
Douglas Bratz seeks relief from personal restraint imposed following his 1987 acquittal by reason of insanity of one count of first degree robbery, contending that the facts supported only a charge of second degree robbery. Since his acquittal, Bratz has been committed by court order to Western State Hospital, where he may remain for a term no longer than the maximum penal sentence allowed if he had been convicted. RCW 10.77.020(3). First degree robbery carries a maximum life sentence; second degree robbery carries a 10-year maximum sentence. Thus, he concludes, a reversal of *761 the original judgment and entry of an order as to second degree robbery mandates his release from commitment pursuant to the 1987 charge. We agree and grant the petition.

FACTS
In June 1987, Douglas Bratz was found not guilty of first degree robbery by reason of insanity (NGI). The trial court that accepted Bratz's plea found:

I.
On January 21, 1987, Douglas Edward Bratz entered the Old National Bank Branch at 1145 Broadway, Tacoma, Pierce County, went up to a teller, stated, "I have nitroglycerin in my coat and I need you to give me money or I'll blow up the bank."

II.
The teller, who had observed that the defendant seemed kind of high or partially drunk, gave the defendant about $80.00, and the defendant said he didn't need that much. The defendant walked away, then returned to the teller and handed her back about half the money. The defendant left the bank and was arrested within one block of the bank, without incident.
Findings and Judgment of Acquittal of Commitment at 1-2.
This was the extent of the court's findings as to the circumstances of the crime. Each of the court's remaining findings pertained to Bratz's mental condition, which the court concluded justified both an acquittal by reason of insanity and an order of commitment to Western State Hospital.[1]
The police report of the crime states:
[The teller] said she noticed [Bratz] when he first got in line. She said he acted kind of strange. When he got to the window he seemed kind of high or maybe partially drunk.
He first said, "I have nitro gylcerine [sic] in my coat and I need you to give me money or I'll have to blow up the bank." He said he owes a tavern some money and he didn't need much. [The teller] said, "[a]re you sure you wanted to do this thing?" At this time she pulled the ones, fives and tens out of the drawer and set off the alarm. She figures she handed him only about 80 dollars. He then said, "I don't need this much."
[Bratz] then walked away from the window.... [The teller] walked out around the counter and [Bratz] approached her again. He reached out and handed her about half the money and said he didn't need this much. He said he was sorry he had to do this. He reached out to shake [her] hand which [the teller] didn't acknowledge. He then left the bank.
Police Report at 2-3.
Bratz then walked across the street and into the Sheraton Hotel where he was arrested minutes later. No nitroglycerin was found on Bratz when searched by police. Upon being apprehended, Bratz confessed to the robbery.
Since his acquittal, Bratz has been confined to Western State Hospital. On three different occasions, Bratz has received conditional release status. But each time he has lost this status due to non-compliance with conditions imposed by the hospital. In its latest report to the superior court, the hospital stated that its records indicated Bratz had a life sentence.
Bratz filed his personal restraint petition (PRP) in April 1999. No appeals were ever taken from the court's 1987 order, and no prior PRPs were filed by Bratz.

ANALYSIS

Procedural Bar

Notice Requirement
As a preliminary matter, the State argues that Bratz's petition is time barred by RCW 10.73.090, which provides in part:
(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if *762 the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes ... a personal restraint petition[.]
The judgment of acquittal and commitment order was filed on June 3, 1987; therefore, Bratz's current petition falls well beyond the prescribed one-year statute of limitations. Bratz asserts that RCW 10.73.090[2] does not operate to bar his claim because he never received notice of the time limit as required by RCW 10.73.120, which provides:
As soon as practicable after July 23, 1989, the department of corrections shall attempt to advise the following persons of the time limit specified in RCW 10.73.090 and 10.73.100: Every person who, on July 23, 1989, is serving a term of incarceration, probation, parole, or community supervision pursuant to conviction of a felony.
Where the Department of Corrections (Department) has failed to notify, or even to attempt to notify, someone entitled to notice under RCW 10.73.120, RCW 10.73.090 will not bar consideration of that person's personal restraint petition on its merits. In re Vega, 118 Wash.2d 449, 450-51, 823 P.2d 1111 (1992). Actual notice is not required; rather, the Department must make a good faith attempt to give notice to all affected persons. In re Runyan, 121 Wash.2d 432, 452, 853 P.2d 424 (1993).
Bratz acknowledges that In re Well, 133 Wash.2d 433, 946 P.2d 750 (1997), precludes him from asserting a statutory right to notice of the time limit. In In re Well, the court held that petitioners committed to a mental institution pursuant to a NGI plea are not statutorily entitled to notice because they are not included in any of the statutorily designated classes of RCW 10.73.120. In re Well, 133 Wash.2d at 444, 946 P.2d 750.
But the court specifically left open the issue of whether a petitioner such as Bratz could assert a constitutional right to notice of the time limit. See In re Well, 133 Wash.2d at 444, 946 P.2d 750 ("We do not rule on whether one might be constitutionally entitled to notice of the time limit, since Well did not raise any such constitutional claim."). Thus, Bratz brings an equal protection challenge to RCW 10.73.120, asserting that "[t]he mentally ill are at least as deserving of notice as convicted felons, and are at least as much in need of notice."[3] Petitioner's Reply Br. at 3.
The Equal Protection Clause requires that persons similarly situated with respect to legitimate purposes of the laws receive like treatment. In re Knapp, 102 Wash.2d 466, 473, 687 P.2d 1145 (1984). Equal protection does not mandate that persons be dealt with identically, but it does require that a distinction have some relevance to the purpose for which the classification is made. In re Young, 122 Wash.2d 1, 45, 857 P.2d 989 (1993).
In undertaking an equal protection analysis, the first question is the standard under which the legislative classification is properly analyzed. Where a classification implicates physical liberty and no suspect or semi-suspect class is involved, rational basis is the proper test. In re Detention of Dydasco, 135 Wash.2d 943, 951, 959 P.2d 1111 (1998). Under rational basis review, a statute must satisfy the following three-part test to pass constitutional muster:
1. Does the classification apply alike to all members within the designated class?
*763 2. Does some rational basis exist for reasonably distinguishing between those within the class and those outside the class? and
3. Does the challenged classification bear a rational relation to the purpose of the challenged statute?
Morris v. Blaker, 118 Wash.2d 133, 149, 821 P.2d 482 (1992).
In Blaker, the firearms act precluded both persons convicted of violent crimes and persons formerly involuntarily committed to a mental hospital from owning or possessing certain firearms. The act provided a means by which persons convicted of violent crimes could be rehabilitated but provided no means by which a person formerly involuntarily committed could be rehabilitated. Our Supreme Court held that relevant provisions of the firearms act were invalid because they violated equal protection: "No plausible justification exists to explain why those who have been convicted of violent crimes should be deemed capable of rehabilitation, but those who were previously involuntarily committed for treatment of a mental disorder are not." Blaker, 118 Wash.2d at 149, 821 P.2d 482.
Although rational basis review is highly deferential, the rationale of Blaker applies here and operates to invalidate RCW 10.73.120.[4] The distinction made by RCW 10.73.120 is even more egregious and arbitrary than that made by the firearms act. There can be no rational basis for requiring that notice of the time limit to collaterally attack a judgment be given to convicted felons but not to those hospitalized following NGI pleas. The only explanation that can be proffered other than animus to the mentally ill is that the statute's non-inclusion of the criminally committed was an unfortunate legislative oversight. Yet, even if the resulting classifications were unintentional, they are arbitrary and, thus, violate rational basis review. See In re Detention of Dydasco, 135 Wash.2d at 951, 959 P.2d 1111.

RCW 10.77.080Preclusion of Claim that He Did Not Commit Acts Charged[5]
The second procedural bar the State asserts is RCW 10.77.080, which provides that a defendant who moves for acquittal on grounds of insanity and is so acquitted "may not later contest the validity of his or her detention on the grounds that he or she did not commit the acts charged." Here, however, Bratz does not deny that he committed the acts charged; indeed, he readily agrees with the trial court's findings that he unlawfully took money after telling a bank teller, "I have nitro glycerin [sic] in my coat and I need you to give me money or I'll blow up the bank." He objects only to the legal conclusion drawn from those acts.
The State argues that Bratz's claim is exactly the type of challenge to the proof that is precluded by RCW 10.77.080. The State asserts that the provision "acts charged" should be read as "crime charged." But there is a marked difference between an act and a crime. If the Legislature had intended the State's construction, it could very well have chosen the phrase "crime charged." The Legislature failed to do so, and we decline to read "crime" into the statute.
We adopt instead Bratz's proposed readingnamely, that the purpose of the section is to prevent the State from having to prove certain facts years later. In other words, the statute is intended to prevent a defendant who submits a NGI plea from later asserting that he did not commit the stipulated facts, *764 whichif the defendant was allowed to so assertwould place an impossible burden on the State to prove years later facts that were previously agreed upon. Construed thusly, the statute does not bar Bratz's claim as he does not deny the acts leading to the charge. His claim puts no burden on the State to prove disputed facts as there simply are no facts in dispute. Rather, at issue is whether the undisputed acts constitute first degree robbery. We conclude that such a claim is not barred by RCW 10.77.080, on grounds that the construction best effectuates the Legislature's intent.
Additionally, we note that we would reach the same conclusion even if we did not deign the Legislature's intent to be clear. When a statute has two reasonable meanings and the Legislature's intent is obscure, the rule of lenity requires that we take the meaning most favorable to the defendant. State v. Riles, 135 Wash.2d 326, 341, 957 P.2d 655 (1998). At a minimum, "acts charged" could reasonably mean the alleged facts underlying the criminal charge, as well as the crime itself charged. The former meaning is the one favorable to Bratz, and thus we must apply that meaning.

Assertion of Prejudicial Constitutional Error
The State's final contention is that Bratz has not shown the prejudicial constitutional error necessary to sustain the petition. This argument also fails.
For purposes of due process, the constitutional constraints imposed on the acceptance of an RCW 10.77.080 motion for acquittal by reason of insanity are similar to those on the acceptance of a guilty plea. State v. Brasel, 28 Wash.App. 303, 311, 623 P.2d 696 (1981). It is well established that a conviction based upon a guilty plea that is not knowing and voluntary is constitutionally invalid. State v. Chervenell, 99 Wash.2d 309, 312, 662 P.2d 836 (1983). A guilty plea is not truly voluntary "unless the defendant possesses an understanding of the law in relation to the facts." McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). To this end, the trial court "must determine `that the conduct which the defendant admits constitutes the offense charged in the indictment or information[.]'" McCarthy, 394 U.S. at 467, 89 S.Ct. 1166 (quoting FED.R.CRIM.P. 11, Notes of Advisory Comm. on Crim. Rules). Requiring this examination protects a defendant "who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." McCarthy, 394 U.S. at 467, 89 S.Ct. 1166 (quoting FED.R.CRIM.P. 11, Notes of Advisory Comm. on Crim. Rules). The trial court's determination that a factual basis exists for the plea does not require that it be convinced of the defendant's guilt beyond a reasonable doubt but, rather, that sufficient evidence exists to sustain a jury finding of guilt. State v. Newton, 87 Wash.2d 363, 370, 552 P.2d 682 (1976).
Bratz alleges that his plea was constitutionally infirm as the factual basis did not exist for his plea, i.e., his plea was involuntary because he did not understand the law in relation to the facts. See In re Hews, 108 Wash.2d 579, 592, 741 P.2d 983 (1987) ("Failure to establish a factual basis is likely to affect voluntariness. This is so because some information about the facts is necessary to an assessment of whether the accused understood `the law in relation to the facts,' and was able to appreciate `the nature of the charge against him,' of which he was entitled to `adequate notice," (citations omitted)). The uncontested prejudice, if Bratz's allegation is correct, is Bratz's continued confinement beyond the statutory maximum. This is a sufficient allegation of prejudicial constitutional error to sustain consideration of the petition's merits.
Having determined that Bratz's petition is not time barred, we next analyze its merits.

Merits of Bratz's Petition
Contending that the facts in the record support only a charge of second degree robbery, Bratz asks this court to reverse his acquittal of first degree robbery and enter an order of acquittal of second degree robbery by reason of insanity.
Robbery is defined:

*765 A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
RCW 9A.56.190.
Robbery in the first degree is defined:
(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:
(a) Is armed with a deadly weapon; or
(b) Displays what appears to be a firearm or other deadly weapon; or
(c) Inflicts bodily injury.
RCW 9A.56.200. Robbery in the second degree is robbery not constituting robbery in the first degree. RCW 9A.56.210.
Here, Bratz did not inflict bodily injury. Consequently, the only two ways to support the first degree robbery charge would be a finding that Bratz was either armed with a deadly weapon or displayed what appeared to be a deadly weapon.

Armed with a Deadly Weapon
Although the charging information alleged that Bratz was armed with nitroglycerin, a deadly weapon, nothing other than Bratz's statement to the teller supports this charge. There is no evidence in either the police report or the court's findings that Bratz ever showed nitroglycerin to anyone. Nor was the nitroglycerin ever discovered, although Bratz was apprehended less than a block away from the bank and merely a few minutes after the robbery. While it is theoretically possible that Bratz might have carefully disposed of the nitroglycerin (without exploding the highly volatile compound) in the brief interim between the robbery and his apprehension, such a conclusion stretches the bounds of reason. Bratz never possessed nitroglycerin and thus was not "armed with a deadly weapon."

Displayed what Appeared to be a Deadly Weapon
First degree robbery may also be committed by displaying what appears to be a deadly weapon. Bratz argues that "displays" requires some physical manifestation beyond merely a verbal threat of harm with a deadly weapon. We agree.
The State does not dispute that no Washington case has ever found a verbal threat, unaccompanied by a physical act indicating the existence of a weapon, to constitute first degree robbery. Admittedly, as the State asserts, there is language in State v. Henderson, 34 Wash.App. 865, 868-69, 664 P.2d 1291 (1983), suggesting that the displays requirement can be satisfied by a verbal threat of harm with a deadly weapon; however, read in context, the case is not so sweeping. In Henderson, the issue was whether "displays what appears" required that the victims actually see the weapon. There, the defendant, while demanding money from two stores, placed his hand in his coat pocket, which contained a large bulky object, and indicated to the victims that he was armed. He challenged his first degree robbery convictions on grounds that no display took place, since the victims never saw a weapon. The court rejected the argument, concluding that the defendant's "words and actions" together met the statute's "displays what appears" requirement. Henderson, 34 Wash.App. at 869, 664 P.2d 1291 (emphasis added). Even in Henderson, the defendant had to commit a menacing physical act beyond his verbal indication that he was armed in order to fall within the first degree robbery statute.[6]
*766 In arguing that words alone can bring a defendant within the parameters of the first degree robbery statute, the State seeks an interpretation that would render "displays" tantamount to "threatens." Yet we are aware that in other instances the Legislature has provided that the mere threat of use of a deadly weapon is sufficient to sustain a first degree charge. See RCW 9A.44.040 (first degree rape). Here, the Legislature did not so provide, instead choosing to require the act of display. We find this significant, as "[i]t is well settled that where the legislature uses certain language in one instance but different, dissimilar language in another, a difference in legislative intent is presumed." Millay v. Cam, 135 Wash.2d 193, 202, 955 P.2d 791 (1998); see also State v. Coe, 109 Wash.2d 832, 845, 750 P.2d 208 (1988) (recognizing that threatened use is not included in the definition of first degree robbery); State v. Ingham, 26 Wash. App. 45, 52, 612 P.2d 801, review denied, 94 Wash.2d 1008 (1980) (distinguishing between the display and threatened use of a deadly weapon).
Thus, we hold that the mere threatened use of a deadly weapon in the commission of a robbery, unaccompanied by any physical manifestation indicating a weapon, is second degree robbery, not first. To conclude otherwise would negate the presumed distinction the Legislature intended when it enacted the first and second degree robbery statutes. While providing that second degree robbery can be committed by the threatened use of immediate force, the Legislature made no mention of threats as being sufficient to constitute first degree robbery. We consequently conclude that the statutory requirement of displays is not satisfied by the mere verbal allusion to a weapon.
As it is undisputed that Bratz made nothing more than a verbal threat, we conclude that Bratz's actions did not support a first degree robbery charge. The trial court should have accepted only a NGI plea to second degree robbery.
In summary, there was not sufficient evidence to sustain a finding that Bratz committed first degree robbery. As such, Bratz's plea and the subsequent judgment are constitutionally infirm. See In re Keene, 95 Wash.2d 203, 622 P.2d 360 (1981) (vacating a forgery conviction obtained by a guilty plea where the evidence did not support a finding that the defendant's acts constituted the crime); State v. Zumwalt, 79 Wash.App. 124, 901 P.2d 319 (1995) (finding an insufficient factual basis to sustain guilty plea to first degree robbery where the weapon, as a matter of law, was not a "deadly weapon" and the information failed to include any facts underlying the conclusion that defendant was armed with a deadly weapon). The resulting prejudice to Bratz is that he is being detained and confined longer than would be statutorily allowed had the proper judgment been entered.
The petition is granted. The trial court is directed to amend its judgment to provide for a maximum term of 10 years, and Bratz shall not be confined under this cause number after the end of that term.[7]
MORGAN, J., and ARMSTRONG, C.J., concur.
NOTES
[1] Specifically, the court found Bratz had a history of mental hospitalizations, suffered from organic brain damage, and was borderline retarded in intelligence.
[2] Bratz also argues that the petition is not time-barred because (1) he is not seeking "postconviction relief;" (2) the judgment is not valid on its face; (3) his claim falls within two of the time limit exceptions provided for in RCW 10.73.100. Because we agree that Bratz never received proper notice and his petition is therefore not time-barred, we do not address these other arguments.
[3] In a single sentence, Bratz asserts that he would also be entitled to notice under the due process clause. Petitioner's Reply Br. at 6. This bare statement is insufficient to merit judicial consideration. See State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992) (passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration).
[4] Thus, we need not decide Bratz's contention that the mentally ill are a semi-suspect class to which the less-stringent intermediate scrutiny test should be applied.
[5] The State asserted at oral argument that a defendant who enters into a plea bargain may not later contest the sufficiency of the evidence supporting the plea. It relies upon State v. Carrier, 36 Wash.App. 755, 677 P.2d 768 (1984), which in turn relied solely upon State v. Majors, 94 Wash.2d 354, 616 P.2d 1237 (1980). The State's argument is unpersuasive because Majors has been limited to its facts by the Supreme Court. See In re Hews, 108 Wash.2d 579, 741 P.2d 983 (1987) (stating that an insufficient factual basis for a plea could likely affect the plea's voluntariness and render the plea constitutionally infirm); In re Moore, 116 Wash.2d 30, 803 P.2d 300 (1991) (finding Majors inapposite because the petitioner did not challenge any of his factual stipulations but only whether the sentence he received was statutorily authorized given those facts).
[6] Additionally, we note that the case which Henderson relied upon as persuasive authority, State v. Smallwood, 346 A.2d 164 (Del.1975), has likewise been so limited. Interpreting identical statutory language as is present here, the Delaware Supreme Court recently concluded:

[T]here must be more than the victim's fear of the existence of a deadly weapon. For example, the victim must see a bulge or suggestion that the defendant's clothing contained a weapon. When the victim's subjective belief is accompanied by an objective physical manifestation that the robber appears to be displaying a deadly weapon, it is sufficient evidence to establish that necessary element of Robbery in the First Degree.
(Citations omitted). Deshields v. State, 706 A.2d 502, 507 (Del.1998).
[7] Civil commitment proceedings may still be instituted against Bratz, if appropriate.