14 P.3d 863 (2000)
103 Wash.App. 893
STATE of Washington, Respondent,
v.
Anton E. BARKER, Appellant.
No. 18773-0-III.
Court of Appeals of Washington, Division 3, Panel Three.
December 26, 2000.
*865 Hugh M. Spall, Jr., Ellensburg, for Appellant.
Lauri M. Boyd, Deputy Prosecuting Attorney, Yakima, for Respondent.
*864 SWEENEY, J.
This is a robbery case. "A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury...." RCW 9A.56.190. "A person is guilty of robbery in the second degree if he commits robbery." RCW 9A.56.210(1). "A person is guilty of robbery in the first degree if in the commission of a robbery ... he ... [d]isplays what appears to be a firearm or other deadly weapon." RCW 9A.56.200(1)(b). Anton Barker walked into the Yakima Payless Shoe Store and told the clerk he had a gun but never displayed one. He ordered her to give him cash. When she turned away, he pressed something hard into her back which she thought might be a gun. Report of Proceedings (RP) at 40. The trial judge instructed the jury on the lesser degree crime of second degree robbery. The jury convicted Mr. Barker of second degree robbery.
The question before us is whether a rational trier of fact could have found that Mr. Barker was not armed with a deadly weapon at the time of this robbery. See State v. Longworth, 52 Wash.App. 453, 466, 761 P.2d 67 (1988). And while the jury certainly could have found that he was armed with a deadly weapon and thereby found him guilty of first degree robbery,[1] it is just as clear that it could have found that he was not armed with a deadly weapon. Mr. Barker's remaining assignments of error are all subject to the abuse of discretion standard of review. And we find no abuse of discretion. We affirm the conviction.

FACTS
Mr. Barker robbed the Payless Shoe Store on April 1, 1999. He told the store clerk, Sheniece Brown, that he had a gun and would use it. She described him as wearing a baseball cap, a baggy gray sweatshirt, and baggy pale green jeans. He had a handkerchief over his nose and mouth and red marks on the back of his hands and side of his face. She tried to open the register but failed. Mr. Barker threatened to shoot her if she did not hurry up. He shoved something hard into her back. She thought it might have been a gun. RP at 40. She eventually opened the register. Mr. Barker took money from the register and a safe and fled.
Ms. Brown called police. They investigated. Security cameras in the store showed a man with dark hair in the area of the cash register. Ms. Brown described a Hispanic man with thick short black hair. She described him as in his mid-twenties with no facial hair. Her description varied in some details from investigator to investigator.
Mr. Barker represented himself during his first trial; it ended in a hung jury. The court declared a mistrial. The State proceeded with a second trial. Ms. Brown identified Mr. Barker as the culprit during the *866 second trial. The trial judge refused to admit the expert opinions of Dr. Geoffrey Loftus on eyewitness testimony, that is, the unreliability of eyewitness testimony.
Another store employee testified that Mr. Barker had been in the store on several occasions prior to the day of the robbery but never bought anything. And he was always accompanied by another woman, Naomi Rogers. The court instructed the jury to disregard testimony of Naomi Rogers' presence in the store before the robbery. It also instructed the jury that Mr. Barker's failure to testify could not be considered. Despite this admonition, the foreperson testified by affidavit after the trial that the jury had considered Ms. Rogers' presence in the store prior to the robbery. The State also referred to Mr. Barker coming to the store with his girl friend during closing argument.
Over Mr. Barker's objection, the court instructed the jury on second degree robbery, as a lesser degree offense to first degree robbery. The jury acquitted Mr. Barker of first degree robbery but found him guilty of second degree robbery. The trial court sentenced him to life in prison without the possibility of parole as a persistent offender, based on earlier convictions.

ANALYSIS
SUFFICIENCY OF THE EVIDENCE TO SUPPORT SECOND DEGREE ROBBERY
Mr. Barker contends that the court erred by instructing the jury on second degree robbery because there was simply no evidence on which the jury could find that he was not armed with a deadly weapon at the time of the robbery.
The question here is whether the State has met its threshold burden of producing sufficient evidence to support an instruction on second degree robbery. State v. Fernandez-Medina, 141 Wash.2d 448, 455-56, 6 P.3d 1150 (2000). The instruction was properly given if there is sufficient evidence upon which a rational jury could base a conviction for second degree robbery. Id. at 456, 6 P.3d 1150.
"A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." RCW 9A.56.190. "A person is guilty of robbery in the second degree if he commits robbery." RCW 9A.56.210(1). But a person is guilty of first degree robbery if the crime is committed while he "[i]s armed with a deadly weapon" or if he "[d]isplays what appears to be a firearm or other deadly weapon[.]" RCW 9A.56.200(1)(a), (b).
Mr. Barker's contention, reduced to its essence, is that the only affirmative evidence is that he displayed what appeared to be a firearm. He was therefore guilty of first degree robberyor nothing.
But Raul Abundiz testified that he was a friend of Mr. Barker's. Mr. Barker confessed he had committed the robbery. And Mr. Barker said he was not armed at the time of the robbery. Mr. Barker told him he just used his finger behind his shirt. Mr. Barker urges that this display when coupled with a threat of a deadly weapon only supports first degree robbery. State v. Henderson, 34 Wash.App. 865, 868-69, 664 P.2d 1291 (1983). His analysis is flawed.
While Mr. Barker's conductpointing a finger under a shirtcertainly supports the "display" element of first degree robbery, it does not follow, necessarily, that it only supports first degree robbery.
First, second degree robbery is an inferior degree of the crime of first degree robbery. RCW 9A.56.200, 9A.56.210. A crime is an inferior degree of another when the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense. The information charges an offense that is divided into degrees. And the proposed offense (here, second degree robbery) is an inferior degree of the charged offense (here, first degree robbery). And there is evidence that the defendant committed only the inferior offense. State v. Peterson, 133 Wash.2d 885, 891, 948 P.2d 381 (1997). Here, the only dispute is over the third requirement, that is, *867 whether there is evidence that the defendant committed only the inferior offense of second degree robbery.
We review this record to determine whether the evidence is sufficient to support a conviction for second degree robbery "when viewed in the light most favorable to the prosecution...." State v. Womble, 93 Wash. App. 599, 602, 969 P.2d 1097, review denied, 138 Wash.2d 1009, 989 P.2d 1139 (1999). The question is whether "any rational jury could find the essential elements of the crime beyond a reasonable doubt." Id. The standard is deferential.
Here, none of the victims saw a firearm. Mr. Barker denied in a statement to his friend that he used a firearm. The jury could then reasonably find that Mr. Barker was not armed. The authorities cited by Mr. Barker to the contrary are distinguishable. See State v. Fowler, 114 Wash.2d 59, 785 P.2d 808 (1990); State v. Kennard, 101 Wash. App. 533, 6 P.3d 38 (2000); Henderson, 34 Wash.App. 865, 664 P.2d 1291.
Fowler is a road rage case. The victim said that Mr. Fowler got out of his car, pulled a handgun from a shoulder holster, and pointed the gun at him. Mr. Fowler denied pulling the gun or pointing it at anyone. He said it was possible that he was carrying his .357 Magnum in a shoulder holster and that it may have been displayed as he removed his shirt in anticipation of a fight. Fowler, 114 Wash.2d at 61, 785 P.2d 808.
The jury convicted him of second degree assault and, by special verdict, found that he was armed with a deadly weapon. Id. at 62, 785 P.2d 808. Mr. Fowler argued that he was entitled to a jury instruction on the lesser included offense of unlawful display of a firearm. "It shall be unlawful for anyone to ... display or draw any firearm ... in a manner... that ... manifests an intent to intimidate another or that warrants alarm for the safety of other persons." Id. at 67, 785 P.2d 808 (quoting former RCW 9.41.270(1) (1969)). The State conceded that unlawful display of a firearm met the legal prong of Workman,[2] but argued that there was no factual basis to support unlawful display of a firearm.[3] The court agreed. There was no evidence to support a theory that Mr. Fowler intended to intimidate the victim with his gun or that he displayed the gun in a manner that would cause the victim alarm. The only evidence was that he may have inadvertently revealed the gun as he removed his shirt, that is assuming he had it that dayhe was not certain. The only other possibility was the victim's version that he pointed the gun at him. Id.
Mr. Barker also relies on State v. Kennard and State v. Henderson for the proposition that the threat of a handgun supportsand only supportsa charge of first degree robbery. The issue in Kennard and Henderson is whether the threat of a handgun, whether or not a weapon is actually visible, is sufficient to support a conviction for first degree robbery. Kennard, 101 Wash.App. at 539-40, 6 P.3d 38; Henderson, 34 Wash.App. at 867, 664 P.2d 1291. And clearly it is. The courts correctly held that a conviction for first degree robbery will be sustained when the evidence is sufficient to show the accused indicated, verbally or otherwise, the presence of a weapon. Id. at 869, 664 P.2d 1291. This is because the effect on the victim is the same regardless of whether the victim actually sees the weapon. Id. at 868-69, 664 P.2d 1291.
But again to say that the threat of a weapon, whether or not one is actually displayed, is sufficient to support a conviction for first degree robbery is different than saying the jury can only find first degree robbery. Here, there is ample evidence that Mr. Barker was not armed.
Again, Mr. Abundiz reported that Mr. Barker said he did not have a firearm when he committed the robbery and just used his finger. None of the clerks at the store saw a gun. And, of course, there was no evidence that a gun was displayed.
In sum, to say that the perpetrator may have a firearm necessarily excludes a jury finding that the defendant was not armed at *868 the time of robbery is to misread Fowler, Kennard, and Henderson.
EXPERT WITNESSEYEWITNESS IDENTIFICATION
Mr. Barker next urges that the trial court abused its discretion by excluding expert testimony of the accuracy of eyewitness identification. The refusal to admit expert eyewitness identification testimony is within the sound discretion of the trial judge. State v. Hernandez, 58 Wash.App. 793, 801, 794 P.2d 1327 (1990). The trial judge abuses his or her discretion when the exercise of discretion is unreasonable or based on untenable grounds. Id.
Here, the court refused to allow the expert to testify following a pretrial hearing. The court concluded that given the evidence in the case, the jury would be in a position to evaluate the credibility of each eyewitness and make its own determination of the accuracy of that identification.
Moreover, counsel for Mr. Barker vigorously cross-examined each eyewitness and brought inconsistencies to the jury's attention. The court's refusal to allow the expert opinion was not then an abuse of discretion, particularly in light of the conflicting testimony at trial. Id. at 803-04, 794 P.2d 1327.
PROSECUTORIAL MISCONDUCT
Mr. Barker next claims that the State subtly and improperly shifted the burden of proof to him by arguing that he must be the robber because although he visited the store several times prior to the robbery, he was not seen in the store after the robbery. This, he argues, was an impermissible comment on his exercise of his right not to testify. He also argues that the prosecutor violated the court's pretrial ruling that the State could not introduce evidence that Mr. Barker's girl friend was in the store just prior to the robbery.
The trial court's rulings on both the admission of evidence and the prosecutor's comments are reviewed for abuse of discretion. State v. Bourgeois, 133 Wash.2d 389, 399, 945 P.2d 1120 (1997); State v. Stenson, 132 Wash.2d 668, 718, 940 P.2d 1239 (1997). And even if the State violated the court's order in limine, Mr. Barker must still show a substantial likelihood that the misconduct affected the jury's verdict. Id. at 718-19, 940 P.2d 1239.
Ms. Brown said a female accompanied Mr. Barker every time he came into the store. This testimony ran afoul of the court's earlier order in limine. But Mr. Barker did not object. Ms. Brown also testified that the female was present in the store just prior to the robbery. Mr. Barker did object. The court sustained the objection and instructed the jury to disregard the statement.
Mr. Barker moved for a mistrial immediately after Ms. Brown's testimony, and again at the end of the trial. The trial judge concluded that the State did not deliberately elicit the testimony nor did it attempt to circumvent the court's order in limine. Based on this conclusion and the court's instruction to disregard the testimony, the court denied Mr. Barker's motion for mistrial. These are tenable grounds for the court's order denying the motion and there is therefore no abuse of discretion. See State v. O'Neill, 91 Wash.App. 978, 992-93, 967 P.2d 985 (1998).
Next, in closing argument the State commented that Mr. Barker did not visit the store in the days and weeks after the robbery. The State then argued this as circumstantial evidence that Mr. Barker must have committed the robbery. Given the testimony that he had been in the store numerous times before but not after the robbery, the prosecutor's comments were an appropriate summation of the evidence presented. These were not, as Mr. Barker suggests, a comment on his right to remain silent.
MOTION FOR NEW TRIALJUROR MISCONDUCT
Mr. Barker next contends that the trial court abused its discretion when it denied his motion for a new trial based on juror misconduct. He secured an affidavit from the foreperson which represented that the jurors used magnifying glasses to look at photographs. The trial court had, apparently, previously denied a request for magnifying glasses. The affidavit also represents that the jury considered evidence of the "presence of Anton Barker's girl friend prior to the *869 robbery" despite the court's admonition not to do so. It was also claimed that at least one juror voted guilty based on Mr. Barker's lack of testimony at trial; and that the jurors re-created the scene of the crime.
First, the mental processes by which jurors reach their findings all inhere in the verdict. State v. Jackman, 113 Wash.2d 772, 777-78, 783 P.2d 580 (1989). And a juror's statement inheres in the verdict if the alleged misconduct is linked to the juror's motive, intent, or belief, or describes the effect upon the juror. Id. Here, then, the only information in the juror's affidavit which we can consider is the re-creation. The evidence of matters inhering in the verdict is beyond our consideration. Id. The rest of the affidavit touches on the jurors' motives, intents, or beliefs.
The evidence here is neither novel nor extrinsic. The jury simply took the evidence presented at trial and based on its own recollection of that evidence, simulated what went on. State v. Balisok, 123 Wash.2d 114, 118, 866 P.2d 631 (1994). The jury heard testimony of the facts of the robbery and merely used its collective memories to try to simulate the testimony that it heard. That is not a re-creation of the crime scene. Id. at 118-19, 866 P.2d 631. The court therefore did not abuse its discretion by denying Mr. Barker's motion for a new trial.
PHOTOMONTAGE
Mr. Barker next argues that the photomontage was so impermissibly suggestive that it violated his due process rights. Manson v. Brathwaite, 432 U.S. 98, 98-99, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). A photograph montage is violative of due process only if the procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, under the totality of the circumstances. State v. Eacret, 94 Wash.App. 282, 285, 971 P.2d 109 (1999).
Conversely, an out-of-court photographic identification meets due process requirements if it is not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The defendant must first show that an identification procedure is suggestive. The court must then determine if the suggestiveness created a substantial likelihood of irreparable misidentification. State v. Linares, 98 Wash. App. 397, 401, 989 P.2d 591 (1999), review denied, 140 Wash.2d 1027, 10 P.3d 406 (2000). It may consider (1) the opportunity of the witness to view the criminal at the time; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id.
Here, the victim was able to identify Mr. Barker as the robber within seconds of being shown the montage. She told the officer that she recognized Mr. Barker from his eyes, high cheekbones, and hair. She was sure that she had the right man. She did not notice that Mr. Barker was wearing a gray sweatshirt at the time. Mr. Barker had complained he was the only suspect wearing a gray sweatshirt. And Ms. Brown had previously told police that the robber wore a gray sweatshirt. The court found that the montage consisted of fairly standard computer-generated photographs of six men with short dark hair in their twenties and thirties. The court found that all the men had mustaches, even though the robbery suspect did not have facial hair. The court agreed that only one man was wearing a gray shirt and that this was suggestive. But it concluded that it was not impermissibly so.
It also found that Ms. Brown had been warned that the montage may or may not contain the picture of the suspect. The court found that the victim had a good look at the suspect on the day of the robbery, even though she was frightened. And the court finally found that only six days had elapsed between the robbery and the victim's identification. Its conclusion that the photomontage did not impermissibly suggest Mr. Barker is amply borne out by the evidence in this record and is therefore supported by substantial evidence. The court did not abuse *870 its discretion by denying Mr. Barker's motion based upon the photomontage.
The judgment of the trial court is affirmed.
BROWN, A.C.J., concur.
SCHULTHEIS, J. (dissenting).
Anton Barker was convicted at trial of a third strike offense. He argues on appeal, as he did before the trial court, that the evidence presented at trial did not support the State's "lesser included"[1] instruction on robbery in the second degree. He steadfastly maintains that the evidence supports only a first degree robbery instruction. While I agree that the resolution of this case is controlled by our Supreme Court's recent decision in State v. Fernandez-Medina, 141 Wash.2d 448, 6 P.3d 1150 (2000), I disagree with the majority's application of the law to the facts of this case. For that reason, I respectfully dissent.
The issue in Fernandez-Medina was whether the factual prong of the test to determine whether the trial court should give a lesser degree instruction was met. The court held that a lesser degree instruction is warranted when: (1) the statutes for the greater and lesser offenses proscribe the same offense; (2) the charged offense divides crimes into degrees and the proposed lesser offense is a lesser degree of the charged offense; and (3) there is evidence that the defendant committed only the lesser offense. Id. at 454, 6 P.3d 1150.
The first two prongs are easily met under the facts of this case since robbery is the proscribed offense and Mr. Barker was charged with first degree robbery, a crime that necessarily includes the lesser crime of second degree robbery. State v. Netling, 46 Wash.App. 461, 464, 731 P.2d 11 (1987). However, when determining whether a party has satisfied the third (factual) prong of this test, the court must look at the evidence in the light most favorable to the party requesting the instruction, in this case the State. Fernandez-Medina, 141 Wash.2d at 455-56, 6 P.3d 1150. To satisfy the factual prong of the Fernandez-Medina test there must be particularized, affirmative evidence that would allow a rational juror to find that the defendant committed the lesser degree offense to the exclusion of the charged offense. Fernandez-Medina, 141 Wash.2d at 455, 6 P.3d 1150. This is a more definite display than a court generally requires prior to giving a particular jury instruction. Fernandez-Medina, 141 Wash.2d at 455, 6 P.3d 1150. Before making its determination regarding jury instructions, the court must look at all of the evidence presented. It is not sufficient reason to give the lesser degree instruction just because the jury may disbelieve the State's evidence, which, as here, suggests that the defendant committed the greater degree offense. Id. at 456, 6 P.3d 1150. It is this final step in the analysis with which I disagree with the majority's analysis.
Mr. Barker alleges that the State failed to meet the requirements of the factual prong of the Fernandez-Medina test, and thus erroneously gave the lesser degree instruction. I agree. Here, the "to convict" instruction[2] for second degree robbery does not contain any sort of weapon element. Nor was evidence presented at trial that would satisfy *871 only the elements of second degree robbery, i.e., that Mr. Barker unlawfully took personal property in the victim's presence against her will by the use or threatened use of force or fear of injury, but that no weapon was displayed. In order to obtain a conviction for first degree robbery, the State had to prove that Mr. Barker displayed what appeared to be a firearm or other deadly weapon during the commission of the crime. I would hold that the State did so under the facts of this case.
Although argued otherwise in the briefing, a mere verbal statement that one is armed with a weapon does not constitute the display of a deadly weapon. Used in a statutory context, the term display requires some physical manifestation beyond a mere verbal threat of harm with a deadly weapon. In re Personal Restraint of Bratz, 101 Wash.App. 662, 674-76, 5 P.3d 759 (2000), review denied (Wash. Dec. 5, 2000 (No. 70137-7). Accordingly, the State had to present evidence that the alleged robber committed a menacing physical act beyond his verbal indication that he was armed, in order to fall within the parameter of the first degree robbery statute. The only evidence presented at trial, with regard to the description of the actual robbery, affirmatively showed that a weapon was displayed during the alleged robbery.
Although the victim testified that she did not see a gun, the alleged robber told her he had a gun and said he would shoot her if she did not cooperate. She also testified that something hard was shoved into her back as she tried to open the cash register. Officer Perry Skipton, a 20-year veteran of the Yakima Police Department, was the first law enforcement official on the scene of the reported robbery. He began to interview the victim within minutes of the crime. He testified that the victim was frightened, upset, and trembling as he interviewed her. She told him that a man came into the store, said he had a gun, and said he wanted the money. She told the officer that she did not see the gun but while she took the money out of the cash register she could feel something pointing into her back. Another of the State's witnesses, Raul Abundiz, testified that Mr. Barker admitted that he had committed the shoe store robbery. Mr. Abundiz also told the jury that Mr. Barker said that he did not really have a weapon during the robbery, but admitted that he put his finger under his shirt so the clerk would believe that he had a gun. When, as here, the victim's subjective belief is accompanied by an objective physical manifestation that the robber appears to be displaying a deadly weapon, it is sufficient evidence to establish that necessary element of robbery in the first degree. Bratz, 101 Wash.App. at 674, 5 P.3d 759. As a result, the State failed to satisfy the factual prong of the Fernandez-Medina test regarding the elements of second degree robbery. For this reason it was an abuse of the trial court's discretion to instruct the jury on the lesser degree offense.
Because this issue is dispositive to the outcome of the appeal, I would reverse and remand for a new trial without reaching the merits of Mr. Barker's other assignments of error. It is important to note that due to double jeopardy concerns, Mr. Barker cannot be retried on charges greater than the charge for which he was convicted here. However, in a strange twist of circumstances, he may be retried on the offense for which he was already convicted, as long as the reversal was not for insufficiency of the evidence. State v. Brown, 127 Wash.2d 749, 757, 903 P.2d 459 (1995). Since I would reverse and remand based on the erroneous jury instruction, this principle is not violated.
NOTES
[1] See State v. Henderson, 34 Wash.App. 865, 868-69, 664 P.2d 1291 (1983).
[2] State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978).
[3] Fowler was a lesser included case; this is an inferior degree case.
[1] There is a distinction between lesser included and lesser degree instructions and each requires a different analysis. State v. Fernandez-Medina, 141 Wash.2d 448, 453-54, 6 P.3d 1150 (2000). Second degree robbery is a lesser degree of first degree robbery, which was charged in the information. The lesser degree term and analysis will be utilized here.
[2] Instruction No. 13 provides in part:

"To convict the defendant, Anton Barker, of the crime of Robbery in the Second Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
"(1) That on or about the 1st day of April, 1999, the defendant unlawfully took personal property of another from the person or in the presence of another;
"(2) That the defendant intended to commit theft of the property;
"(3) That the taking was against that person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;
"(4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking; and
"(5) That the acts occurred in The State of Washington."