[No. 19322-5-III.  Division Three.  July 24, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WARREN SCHERZ, *Appellant*.

*David N. Gasch*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

KURTZ, C.J. — Michael Warren Scherz appeals his Spokane County conviction for the crime of first degree robbery which, in this case, requires display of what appears to be a firearm or other deadly weapon. RCW 9A.56.200(1)(b). He contends (1) the court erred in instructing the jury that

"display" includes the defendant indicating verbally or otherwise the presence of a deadly weapon and (2) the evidence was insufficient to support the conviction. We agree with Mr. Scherz, and reverse the conviction and remand for entry of judgment and resentencing on the lesser degree offense of second degree robbery.

On August 30, 1999, Mr. Scherz entered a Washington Trust Bank branch in downtown Spokane. Wearing camouflage clothes, he approached teller Helen Boehme and stated, "I need about a thousand dollars. I have a hand grenade in my pocket and I need a thousand dollars." Report of Proceedings (RP) at 86. Ms. Boehme asked if he was serious; Mr. Scherz responded, "Yes." RP at 88. This made her fearful, so she gave him $1,000. He put the money in his pocket and left the bank. Ms. Boehme did not see a hand grenade or any other weapon.

FBI (Federal Bureau of Investigation) agents soon arrested Mr. Scherz in a nearby hotel lobby and seized most of the money from his person. He confessed to Agent Leland McEuen that he robbed the bank and that he had told the bank teller he had a hand grenade. Mr. Scherz also told Agent McEuen that he had reached into his left jacket pocket and pulled out the end of a set of toenail clippers "just a little bit to see the silver, so she'd think it was a grenade." RP at 140. But neither Ms. Boehme nor any of the other bank employees who witnessed the robbery saw the toenail clippers or anything else that appeared to be a weapon.[1] Agent McEuen did seize a pair of toenail clippers on a key chain from Mr. Scherz's person.

The court gave the following "to convict" instruction on the elements of first degree robbery:

> To convict the defendant of the crime of robbery in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about [the] 30th day of August, 1999, the defendant unlawfully took personal property from the person or in the presence of another;

---

[1] The silver toenail clippers are not visible in the several photographic exhibits showing Mr. Scherz while he was in the bank.

(2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That force or fear was used by the defendant to obtain or retain possession of the property *or*;[2]

(5) That in the commission of these acts the defendant displayed what appeared to be a firearm or other deadly weapon; and

(6) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

Instruction No. 8, Clerk's Papers (CP) at 47.

Over defense objection, the court gave Instruction No. 13: "Display, in addition to its common meaning, includes the defendant indicating (verbally or otherwise) the presence of a deadly weapon." CP at 52.

The court also gave Mr. Scherz's requested lesser degree instruction on second degree robbery, which is identical in elements to first degree robbery but without element (5) above—display of what appeared to be a firearm or deadly weapon.

The jury convicted Mr. Scherz of first degree robbery. He appeals.

Mr. Scherz contends in his opening and reply briefs that the court erred in giving Instruction No. 13, based on its interpretation of *State v. Henderson*, 34 Wn. App. 865, 664 P.2d 1291 (1983), that words alone are sufficient to constitute the element of displaying what appears to be a deadly weapon. Mr. Scherz argues that *Henderson* requires some physical manifestation of the presence of a weapon in addition to words in order to satisfy the display element. *In*

---

[2] Because the instruction uses the word "or" instead of "and," it is an incorrect statement of the elements of the crime. *See infra* note 5.

*re Pers. Restraint of Bratz*, 101 Wn. App. 662, 5 P.3d 759, *motion for discretionary review denied*, No. 70137–7 (Wash. Dec. 5, 2000). He asserts his conduct did not meet that element because no one in the bank saw anything resembling a weapon or any movement such as a hand to the pocket to indicate the presence of a weapon. And, the toenail clippers are irrelevant because no one saw them either. Mr. Scherz thus concludes he was prejudiced by the erroneous "display" instruction, without which the jury could have convicted him only of second degree robbery. He requests a remand for entry of judgment and resentencing on that lesser charge.

The State, on the other hand, contends it is *State v. Kennard*, 101 Wn. App. 533, 6 P.3d 38, *review denied*, 142 Wn.2d 1011 (2000), and not *Bratz*, 101 Wn. App. 662, that presents the correct interpretation of *Henderson*. According to the State, *Kennard* holds that a mere verbal indication of a weapon is sufficient to meet the display element. This is because the effect of fear and apprehension compelling the victim to comply with the defendant's demand for money is the same regardless of whether the defendant brandished the weapon or the victim actually saw it. Instruction No. 13 was therefore a correct statement of the law in this case.

■■■■ This court reviews a challenged jury instruction de novo, evaluating it in the context of the instructions as a whole. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Generally, instructions are sufficient if they properly state the applicable law without misleading the jury and permit each party to argue its theory of the case. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). All jury instructions must be supported by substantial evidence; it is prejudicial error to submit an issue lacking in such evidence to the jury. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

Analysis begins with *Henderson*, 34 Wn. App. 865, in which the defendant was convicted of two first degree robberies. In the first, the defendant demanded that a convenience store employee give him "all the bills." *Id.* at

866. The employee observed the defendant's right hand concealed in his right front pocket, which had a bulge. The employee did not see a weapon, but believed the defendant had a small caliber pistol and gave him the money. *Id.* In the second robbery, the defendant demanded that a store employee give him "all the money." The employee asked, "Are you kidding?" The defendant then put his right hand in his jacket pocket and, indicating the pocket, stated, "No. I have this." The employee did not see a weapon, but believed the defendant was armed and gave him the money. *Id.* at 867.

Mr. Henderson contended his conduct did not meet the "display" element of first degree robbery in either case because he did not exhibit any weapon to the victims' sight. The court first observed that the first degree robbery statute does not define "display," but that its dictionary meaning includes " 'to spread or stretch out or wide: unfold . . . *exhibit to the sight or mind*: . . . manifest, disclose . . . .' " *Id.* at 867 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (1976)). Moreover, by enacting the first degree robbery statute, it appeared the Legislature intended to proscribe conduct in the course of a robbery that leads the victim to believe the robber is armed with a deadly weapon, whether or not the weapon is actually loaded and operable, and whether it is real or a toy. *Id.* at 868.

The court affirmed both convictions, reasoning:

> It seems to us that where the accused indicates (verbally or otherwise) the presence of a weapon (real or toy), the effect on the victim is the same whether it is actually seen by the victim or whether it is directed at the victim from inside a pocket. In either situation the apprehension and fear is created which leads the victim to believe the robber is truly armed with a deadly weapon. Accordingly, the victim feels compelled to comply with the accused's demand for money. . . .
>
> . . . Here, the evidence established both victims apprehended defendant's *words and actions* to mean he had a gun. We hold, therefore, the trial court properly submitted the first degree robbery charges to the jury . . . .

*Id.* at 868-69 (footnote omitted) (emphasis added).

This reasoning is further illustrated in *Kennard*, 101 Wn. App. 533, and *State v. Barker*, 103 Wn. App. 893, 14 P.3d 863 (2000), *review denied*, 143 Wn.2d 1021 (2001). In *Kennard*, the defendant demanded money from a bank teller. He then stated he had a gun, patted his hip, and told the teller he knew where she lived. The defendant was convicted of first degree robbery, and the court upheld the giving of the following jury instruction based on *Henderson*:

> " 'To display what appears to be a firearm' means to exhibit or show what appears to be a firearm to the view of the victim or to otherwise manifest by *words and actions* the apparent presence of a firearm even though it is not actually seen by the victim."

*Kennard*, 101 Wn. App. at 537 (emphasis added).

In *Barker*, the defendant entered a store and told the clerk he had a gun but never displayed one. He ordered the clerk to give him cash and threatened to shoot her if she did not hurry up. When she turned away, he pressed something hard into her back that she perceived to possibly be a gun. *Barker*, 103 Wn. App. at 897. There was no evidence that the defendant in fact had a gun. A friend of the defendant testified that the defendant told him he just used his finger behind his shirt. *Id.* at 899. The court gave jury instructions on both first and second degree robbery; the jury convicted the defendant of second degree robbery. In light of *Kennard* and *Henderson*, there was no dispute in *Barker* that the display element of first degree robbery was satisfied. *Id.* at 901.[3]

■ ■ *Henderson*, *Kennard*, and *Barker* are thus all consistent in that the defendants' threats of a weapon also involved a menacing physical act in addition to words so as to justify including the display element in the first degree robbery instructions. In *Henderson*, the defendant indi-

---

[3] Judge Schultheis dissented in *Barker* on the question whether the evidence, i.e., the display of what was perceived as a weapon, supported the giving of only a first degree robbery instruction to the exclusion of a second degree instruction. *Id.* at 907-08 (Schultheis, J., dissenting).

cated the presence of a weapon with his hand in his bulging pocket to the first employee. Likewise, stating "I have this" while pointing to his pocket, implied the presence of a weapon to the second employee. In *Kennard*, the defendant patted his hip and told the victim he knew where she lived after stating he had a gun. And, in *Barker*, the defendant pointed his finger into the victim's back to make her think he had a gun.

In contrast, *Bratz*, 101 Wn. App. 662, is the only Washington case cited or found that addresses the precise issue here, i.e., whether mere threatening words indicating the existence of a weapon satisfies the display element of first degree robbery. In *Bratz*, the defendant entered a bank and stated to a teller, " 'I have nitroglycerin in my coat and I need you to give me money or I'll blow up the bank.' " *Id*. at 665. There was no evidence that the defendant showed nitroglycerin to anyone and none was discovered on his person when he was arrested shortly after the robbery. *Id*. at 674. He challenged his first degree robbery conviction on the theory that the display element of the crime requires some physical manifestation beyond a mere verbal threat of harm with a deadly weapon.

The State argued to the contrary based on *Henderson*, but the court agreed with Mr. Bratz, explaining that the defendant in *Henderson* had to commit a menacing physical act beyond his verbal indication he was armed in order to be found guilty of first degree robbery. *Henderson* thus actually held that the defendant's " 'words and actions' " together met the robbery statute's " 'displays what appears' " requirement. *Bratz* 101 Wn. App. at 675 (quoting *Henderson*, 34 Wn. App. at 869).

The *Bratz* court further explained that to accept the State's interpretation of *Henderson* would render "displays" tantamount to "threatens." Yet, for example, in RCW 9A.44.040 (first degree rape) the Legislature has provided that a mere threat of use of a deadly weapon is sufficient to sustain a first degree rape charge. But with first degree robbery, the Legislature did not so provide, instead choos-

ing to require the act of display. This is significant because " '[i]t is well settled that where the Legislature uses certain language in one instance but different, dissimilar language in another, a difference in legislative intent is presumed.' " *Bratz*, 101 Wn. App. at 675 (quoting *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998)). *See also State v. Coe*, 109 Wn.2d 832, 845, 750 P.2d 208 (1988), in which the court noted that threatened use of a weapon is not included in the definition of first degree robbery.

*Bratz* thus held that the mere threatened use of a deadly weapon in the commission of a robbery unaccompanied by any physical manifestation indicating a weapon is second degree robbery, and does not satisfy the display element of first degree robbery.[4] To hold otherwise would negate the presumed distinction the Legislature intended in enacting the first and second degree robbery statutes. *Bratz*, 101 Wn. App. at 676.

This reasoning is echoed in the *Barker* dissent:

> Although argued otherwise in the briefing, a mere verbal statement that one is armed with a weapon does not constitute the display of a deadly weapon. Used in a statutory context, the term *display* requires some physical manifestation beyond a mere verbal threat of harm with a deadly weapon. *In re Personal Restraint of Bratz*, 101 Wn. App. 662, 674-76 . . . . Accordingly, the State had to present evidence that the alleged robber committed a menacing physical act beyond his verbal indication that he was armed, in order to fall within the parameter of the first degree robbery statute.

*Barker*, 103 Wn. App. at 908 (Schultheis, J., dissenting).

We agree with Mr. Scherz that *Bratz* is controlling here. Unlike in *Henderson*, *Kennard*, and *Barker*, where the

---

[4] *Bratz* further noted that the case upon which *Henderson* relied as persuasive authority, *State v. Smallwood*, 346 A.2d 164 (Del. 1975), has been so limited by the Delaware Supreme Court in *Deshields v. State*, 706 A.2d 502 (Del. 1998). *Bratz*, 101 Wn. App. at 675 n.6. *Deshields* held that more than the victim's fear of a deadly weapon is required to meet the display element of first degree robbery. For example, the victim must see a bulge or suggestion that the defendant's clothing contained a weapon. The victim's subjective belief must be accompanied by an objective physical manifestation that the robber appears to be displaying a deadly weapon. *Deshields*, 706 A.2d at 507.

defendants' physical manifestations justified first degree robbery instructions for displaying what appeared to be a weapon, Mr. Scherz's mere statement he had a hand grenade is akin to Mr. Bratz's mere verbal threat to blow up the bank with nitroglycerin. Critically, not only did no witness see the silver end of the toenail clippers, but there is also no evidence in the record that anyone saw Mr. Scherz motion toward his pocket or make any physical gesture indicating a weapon along with the verbal threat. No witness was asked that question.

The State nevertheless contends that the dictionary definition of "display" includes exhibiting to the sight or mind, thus making Mr. Scherz's verbal threat of a deadly weapon a display to the mind. *Henderson*, 34 Wn. App. at 867. And, any physical act by Mr. Scherz would only have reinforced the verbal display already completed. The State thus concludes Mr. Scherz's words were the equivalent of a "toy gun," which the victim was not expected to investigate to determine if it was real.

This reasoning is flawed because in both *Henderson* and *Kennard*, it was the defendants' *words and actions* that exhibited a weapon to the victims' minds. Mr. Scherz's mere statement allowed the victim only to imagine a weapon, yet perceive a threat that satisfied the elements of second degree robbery. Although the effect of fear on the victim may be the same, the defendant's verbal statement without more is insufficient for first degree robbery. Under the particular facts of this case, Instruction No. 13 was an incorrect statement of the law and the court erred in giving it to the jury.

Accordingly, Mr. Scherz's additional contention that the evidence was insufficient to support the conviction for first degree robbery is correct because there was no evidence of the charged alternative, i.e., display of what appeared to be a weapon in the commission of what was otherwise second

degree robbery. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).[5]

The first degree robbery conviction is reversed and the case remanded for entry of judgment and resentencing on the charge of second degree robbery.

SWEENEY and SCHULTHEIS, JJ., concur.

Reconsideration denied August 24, 2001.

---

[5] We note that the error in the "to convict" instruction, Instruction No. 8, although not mentioned by the parties, is one of constitutional magnitude and provides an additional ground for reversal. As reflected in the instruction conference and closing arguments, the error was apparently inadvertent and not noticed by the parties or the court. Ironically, it came from the defense-proposed version of the instruction and not the State's. The instruction told the jury it could convict of first degree robbery if it found Mr. Scherz used force or fear to obtain the money (second degree robbery), *or*, if in commission of the acts he displayed what appeared to be a deadly weapon. The effect is to illustrate exactly the analysis in *Bratz*—the State's interpretation of *Henderson* that words without a menacing physical act would render "displays" tantamount to "threatens." Given that the victim Ms. Boehme testified she was fearful, it is impossible to tell whether the jury was misled into a directed verdict for first degree robbery because she gave up the money out of fear. This denied Mr. Scherz a fair trial. *See State v. Smith*, 131 Wn.2d 258, 262-63, 930 P.2d 917 (1997) (it cannot be said that a defendant has had a fair trial if the jury might guess at the meaning of an essential element of a crime; jury has right to regard the "to convict" instruction as a complete statement of the law); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 571, 852 P.2d 295 (1993) (court may sua sponte raise issue of manifest error affecting constitutional rights—chief reason is to decide cases in accordance with applicable law).