[No. 5056-4-III.   Division Three.   June 7, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ARLAN
KEITH HENDERSON, *Appellant.*

*Irene Cleavenger,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Philip A. Meyers, Deputy,* for respondent.

ROE, C.J.—Arlan Henderson appeals his conviction of two counts of first degree robbery.

On February 18, 1981, at about 2 a.m., a black male, later identified as defendant Henderson, entered a 7–Eleven store in Pasco and requested change. The store's employee, Michael Howard, opened the cash register and the defendant demanded "all the bills". Howard observed defendant's right hand was concealed in his right front pocket which had a bulge. Believing the defendant had a small caliber pistol, Howard handed over approximately $150, and the defendant fled the scene. No weapon was actually seen by Howard. Within a few minutes of the robbery, a police officer found a pair of coveralls several blocks away. They were identical to those worn by the defendant and in the right front pocket police found a ratchet–type tool with a pistol grip handle.

The next day, Gloria McBride, an employee of the Lakeside Cleaners in Pasco, was robbed. At about 2 p.m. a black male, later identified by Mrs. McBride as defendant Henderson, demanded "all the money" from her. Incredulous, she asked, "Are you kidding?" The defendant then put his right hand in his jacket pocket and, indicating the pocket, stated, "No. I have this". Believing the defendant was armed, Mrs. McBride gave him all the bills (approximately $100). No weapon was actually seen by Mrs. McBride.

Defendant's first trial ended in a mistrial. Upon retrial defendant was found guilty as charged of two counts of first degree robbery pursuant to RCW 9A.56.200(1)(b).[1]

First, defendant contends there is no evidence to prove the element of "[d]isplays what appears to be a firearm or other deadly weapon" because (1) the defendant did not state he had a weapon nor was one shown to either victim; and (2) neither victim actually saw a weapon but only had a belief the defendant may have been armed. In other words, defendant claims that "display" means actually exhibited to the victim's sight.

We have found no Washington case which has addressed this issue. The word "display" is not defined in the statute. *Webster's Third New International Dictionary* 654 (1976) defines display:

to spread or stretch out or wide: unfold . . . *exhibit to the sight or mind*: . . . manifest, disclose . . .

(Italics ours.) *See also State v. Hauck,* 33 Wn. App. 75, 77, 651 P.2d 1092 (1982). In determining the meaning of a word used but not defined in a statute and which has no fixed ordinary meaning, a court must give careful consideration to the subject matter involved, the context in which the words are used, and the purpose of the statute. *State v. Stockton,* 97 Wn.2d 528, 533, 647 P.2d 21 (1982). The

---

[1]RCW 9A.56.200(1)(b) provides:

"(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

". . .

"(b) Displays what appears to be a firearm or other deadly weapon; . . ."

former robbery statute, RCW 9.75.010[2] (Laws of 1909, ch. 249, § 166) did not provide for degrees of robbery; however, RCW 9.95.015 provides for enhanced punishment if "the accused was armed with a deadly weapon at the time of the commission of the crime . . ." *See State v. Willis*, 5 Wn. App. 441, 445, 487 P.2d 648 (1971). By enacting RCW 9A.56.200(1)(b), it appears the Legislature intended to proscribe conduct in the course of a robbery which leads the victim to believe the robber is armed with a deadly weapon, whether the weapon is actually loaded and operable or not, and whether the weapon is real or toy. This is because the statute merely requires that the accused "display" what "appears" to be a firearm or deadly weapon. The following argument from page 14 of the State's brief is well taken:

> If it is true that a robbery victim may be as convinced of the presence of a gun by a hand in the pocket as by the actual sight of a toy gun, then it follows that the legislative purpose must be to punish both equally. To restrict the interpretation of the statutory language as suggested by Defendant would thus defeat the legislative purpose not only as to subsection (1)(b), but as to (1)(a) as well, by enabling any robber with a toy or *real* gun to escape the enhanced penalty simply by placing his gun in his pocket or a paper bag.

It seems to us that where the accused indicates (verbally or otherwise) the presence of a weapon (real or toy), the effect on the victim is the same whether it is actually seen by the victim or whether it is directed at the victim from inside a

---

[2]Former RCW 9.75.010 provided:

"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear. Every person who shall commit robbery shall be punished by imprisonment in the state penitentiary for not less than five years." Laws of 1909, ch. 249, § 166.

pocket. In either situation the apprehension and fear is created which leads the victim to believe the robber is truly armed with a deadly weapon. Accordingly, the victim feels compelled to comply with the accused's demand for money.[3] The evidence in the instant case establishes this scenario.

Cases from other jurisdictions have interpreted similar statutes and have reached the same result. *State v. Smallwood*, 346 A.2d 164 (Del. 1975) presented essentially the same facts. The court stated the Legislature's use of the terms "displays" and "appears" implied the focus was on the victim's reaction, and not on whether the accused was in fact armed. It considered the definition of display as including an exhibition or manifestation to the mind as well as to the sight. The court concluded at page 167:

> In sum, [the statute] reaches not only the robber who exposes a deadly weapon to the view of his victim, but also the robber who intimidates by otherwise manifesting the presence of such a weapon even though it is not seen by the victim.

*See also People v. Knowles*, 79 A.D.2d 116, 436 N.Y.S.2d 25 (1981); *People v. Jury*, 3 Mich. App. 427, 142 N.W.2d 910 (1966). Here, the evidence established both victims apprehended defendant's words and actions to mean he had a gun. We hold, therefore, the trial court properly submitted the first degree robbery charges to the jury and denied defendant's motion to dismiss.

Next, defendant argues it was error for the trial court to rule that if the defendant testified, he could be impeached by proof of a prior Illinois burglary conviction which was entered after these robberies occurred in Washington.

ER 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall

---

[3]We note the recent plurality opinion in *State v. Hentz*, 99 Wn.2d 538, 663 P.2d 476 (1983), which involved first degree rape. We observe the opinions of eight members of the court in the case decided by a plurality support our interpretation.

be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Defendant claims the trial court improperly characterized the burglary conviction as a crime involving "dishonesty" under ER 609(a)(2) rather than exercising its discretion under ER 609(a)(1).

The decision whether to admit prior convictions for impeachment purposes is clearly within the discretion of the trial court and should not be disturbed absent a clear showing of abuse. *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981). Each case should be evaluated on its own facts. *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980). In exercising its discretion through the balancing procedure prescribed by ER 609(a)(1), the trial court, of course, should have in mind that the only purpose of impeaching evidence is to aid the jury in evaluating a witness' credibility, including a defendant when he elects to take the witness stand. *Alexis*.

Here, in a lengthy colloquy, the trial judge set forth his reasons for admitting evidence of the defendant's prior convictions. The decision was based on both ER 609(a)(1) and (2). Besides, even though the trial court stated "the crime of burglary is a crime of dishonesty", it also cited *Alexis* and proceeded to balance the probative value of the evidence against its prejudicial effect. The record establishes the trial court exercised its discretion and made a full determination with respect to the probative value of the evidence. Assuming arguendo the trial court mischaracterized burglary as a crime of dishonesty pursuant to ER 609(a)(2), there was sufficient evidence in the record to show the trial court's balancing procedure to justify admitting the prior conviction pursuant to ER 609(a)(1). A

determination of a trial court will be sustained on any proper basis within the record; it will not be reversed merely because the trial court gave wrong or insufficient reasons for its rendition. *Pannell v. Thompson,* 91 Wn.2d 591, 603, 589 P.2d 1235 (1979); *State v. Heiner,* 29 Wn. App. 193, 198, 627 P.2d 983 (1981).

Finally, defendant contends the trial judge abused his discretion by sentencing him under the wrong statute to two concurrent life terms.

■ Robbery in the first degree is a class A felony. RCW 9A.56.200(2). The sentencing statute in effect at the time the crimes occurred was former RCW 9A.20.020(1)(a), which provided:

> Every person convicted of a classified felony shall be punished as follows:
>
> (a) For a class A felony, by imprisonment in a state correctional institution for a maximum term fixed by the court of not less than twenty years, or by a fine in an amount fixed by the court of not more than ten thousand dollars, or by both such imprisonment and fine;

Laws of 1975, 2d Ex. Sess., ch. 38, § 2, p. 153. An amendment to RCW 9A.20.020 which became effective July 1, 1981 provided:

> No person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
>
> (a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment, or by a fine in an amount fixed by the court of fifty thousand dollars, or by both such confinement and fine;

Here, although the crimes for which defendant was convicted occurred prior to July 1, 1981, defendant's sentencing occurred afterwards. It seems the trial judge erroneously believed the 1981 amended statute was in effect. The error was called to the judge's attention by the prosecutor, and the court stated:

> THE COURT: Well, I don't think it makes any difference as a practical matter. I don't think it makes any difference in the Parole Board's assessment of the situation, so I'm going to sentence him to life.

Defendant argues the sentence is ex post facto in its application to him because the new statute took away the judge's discretion to impose a lesser maximum term. A statute is ex post facto when it inflicts a greater punishment for the commission of a crime than that which was originally annexed to the crime when committed. *Johnson v. Morris,* 87 Wn.2d 922, 927, 557 P.2d 1299 (1976). In *In re Mooney,* 26 Wn.2d 243, 173 P.2d 655 (1946), the defendant, while serving a prison sentence, pleaded guilty to second degree murder. He was given a life sentence which further provided, "which sentence will commence at the conclusion of the sentence he is now serving in the state penitentiary". *In re Mooney,* at 244. The Supreme Court remanded for resentencing, holding:

> Under the law existing at that time, the petitioner was entitled to receive a minimum sentence of not less than ten years; and, after serving the minimum term, he would be eligible to be considered for parole, whether such parole would be granted or not. This failure to give a minimum sentence was to the detriment and material disadvantage of the petitioner.

*In re Mooney,* at 245. *See also State v. Hanlen,* 190 Wash. 563, 69 P.2d 806 (1937).

RCW 9.95.010 requires the court to fix the maximum term as provided by law for the crime of which defendant was convicted or, if there is none, the court may fix such maximum term for any number of years up to and including life imprisonment; but where the maximum term is fixed by the court, it shall be fixed at not less than 20 years. Here, although the trial judge could have imposed life sentences under either the former or amended statute, it is unclear from the record whether he intended to do so under the applicable statute (former RCW 9A.20.020(1)(a)) or felt constrained to do so under the amended statute which did not apply. Since the record is unclear, we believe the defendant should be resentenced.

Conviction affirmed, and defendant shall be returned to the Superior Court for resentencing.

GREEN and McINTURFF, JJ., concur.