IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31996-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FIDEL CORTEZ, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Fidel Cortez appeals his conviction for burglary

and two counts of robbery as an accomplice. He argues (1) prosecutorial misconduct,

(2) improper denial of a motion to suppress evidence, (3) insufficiency of the evidence to

convict, (4) the trial court impermissibly limited cross-examination, (5) the trial court

improperly admitted evidence, and (6) cumulative error. In his statement of additional

grounds for review (SAG), he argues the trial court erred when it imposed legal financial

obligations (LFOs) against him without first inquiring into his current and future ability

to pay. The State concedes one LFO should be stricken. We agree and otherwise affirm.

FACTS

On January 29, 2012, Cortez and Christopher Blanco discussed their plan to rob Cody Spicer, whom Cortez believed was a heroin dealer. They planned for Johnny Torres to assist them.

That night, Blanco and Robert Cooper were at Spicer's duplex. While there, Blanco used Cooper's and Spicer's cellular phones to call Cortez five or six times. After making the calls, Blanco returned the phones. In one of the calls, he asked Cortez to pick him up from Spicer's duplex.

Cortez asked Homero Villanueva for a ride so he could pick up Blanco. Villanueva had been drinking, so Cortez agreed to drive. When the two got into Villanueva's car they were joined by Torres, Ismael Ortiz, and Alejandro Castro.

Cortez and the others arrived at Spicer's duplex in the early morning hours of January 30. Torres gave Blanco money to buy heroin from Spicer to confirm that heroin was present. After Blanco returned with the drugs, Ortiz, Torres, and Castro exited the car wearing bandanas covering their faces. One of them had a gun.

The three originally went to the wrong side of the duplex, where Amy Gioletti lived. Gioletti heard someone tapping on her back door. Blanco directed the three men to Spicer's side of the duplex. Blanco then returned to the car.

Cooper was still at Spicer's house. As Cooper was talking to friends, three people wearing masks or bandanas covering their faces entered the duplex and yelled at people to get on the ground. Cooper noticed a silver gun. Cooper and Spicer got on the ground.

Someone yelled, "Give me the stuff," and removed Cooper's wallet from his pocket. 2 Report of Proceedings (RP) at 157. Gioletti heard the yelling from her duplex and called the police.

Villanueva, Blanco, and Cortez had remained in the car. Villanueva asked Cortez what the other three were doing. Cortez responded, "Heroin." 1 RP at 72. Soon after, Ortiz, Torres, and Castro exited the duplex and ran back to the car, saying "hell, yeah, we did it." 1 RP at 73. The group fled in Villanueva's car.

The police arrived at Spicer's duplex shortly after the group had fled. The robbers had taken Cooper's and Spicer's cellular phones. Cooper told police his phone had global positioning system (GPS) tracking on it, but he needed his wife to access his account.

Corporal Juan Loera of the Moses Lake Police Department went with Cooper to his house and met with Cooper's wife, Crystal Cooper. Crystal used the laptop in Corporal Loera's patrol car to track Cooper's phone.

The tracking dot generally followed a logical course before settling on a house located on Miller Drive. There, the robbers had recently arrived, and one or more of them were drinking beer and injecting heroin. Corporal Loera and Officer Paul Ouimette arrived at the house and called for backup.

Corporal Loera also sought a search warrant for the house based on Cooper's statement and the results from the GPS tracking. In his application for the search warrant, Corporal Loera described the robbery, Cooper's stolen phone, how he and

3

Crystal had tracked Cooper's stolen phone to the subject house, and how the GPS tracking provided a margin of error of between 17 and 20 yards.

After more officers arrived, Officer Ouimette called to the occupants to come out and talk to police. The occupants panicked, and hid the items seized in the robbery around the house. Before the search warrant was authorized, the occupants—including Cortez—came outside and submitted to police.

Once the search warrant was authorized, police searched the house. In addition, Corporal Loera used his cellular phone to call Cooper's phone. Police found a silver handgun, a knife, and items belonging to Spicer and Cooper, including cellular phones belonging to each, and Cooper's wallet.

Police took Cooper's phone as evidence, but Cooper requested it back for his use. Mike Shay, the prosecutor's investigator, met with Cooper to return his phone. Shay asked Cooper to show him the call log on the phone. The call log for January 30 showed Corporal Loera's cellular number as a missed call, and preceding that, repeated outgoing calls to the same number.

## PROCEDURE

At a hearing before trial, Cortez moved the court to suppress all evidence taken from the search of the house at Miller Drive. He argued there was insufficient information for a magistrate to know the GPS tracking was accurate. The parties stipulated that Cortez did not live at the house. The State argued that a reasonable person was sufficiently familiar with cellular phones and GPS tracking for a magistrate to make

4

a decision about probable cause. The trial court agreed and denied Cortez's motion to suppress.

At trial, Blanco testified on direct that he cooperated with police and testified against Cortez to obtain a lesser sentence. He testified he faced a maximum sentence of 22 years, including firearm enhancements, but received a sentence of only 2 years because of his agreement to cooperate. Cortez sought to admit Blanco's charging information to show how the sentence was structured with the firearm enhancements. The State objected and argued the charging information was irrelevant. Cortez agreed Blanco testified accurately about the maximum sentence he faced, and the lesser sentence he received. The trial court sustained the State's objection and prevented Cortez from admitting the charging information.

Later, the State attempted to admit a photograph of Cooper's cellular phone log through Shay, its investigator. Cortez objected and questioned Shay's ability to authenticate the photograph. The trial court excused the jury so the trial court could hear argument. After argument, the trial court overruled Cortez's objection. But the trial court largely neutralized the call log by also ruling that Shay could not testify that the outgoing number that was repeatedly dialed belonged to Cortez.[1]

At trial, Officer Ouimette testified Corporal Loera initially sent him to a location on Grape and Dale. This location was not on the route taken by the robbers, and was

---

[1] Blanco testified he did not remember Cortez's cellular number. Shay would have confirmed the number belonged to Cortez, but the basis of his knowledge depended on hearsay.

nowhere near the house on Miller Drive. During closing arguments, Cortez questioned

the accuracy of the GPS tracking. In rebuttal, the State responded:

> [STATE:] We do have this one random GPS hit. Yeah. If you've
> ever used one of those things—and I'm sure you all have, with cell phone
> GPS—they sometimes give big circles, they're not accurate sometimes
> when they're displaying themselves. We have a couple along the route
> right there—
>> [DEFENSE]: Your Honor, I think I need to make an objection.
>> THE COURT: Sustained. That's arguing facts not in evidence.

4 RP at 680-81. Cortez did not request an admonition from the bench for the jury to

ignore the argument or a curative instruction.

The jury found Cortez guilty on counts 1, 2, and 3—the robberies of Spicer and

Cooper and the burglary in Cooper's residence. The jury found Cortez not guilty of

various other charged crimes. And the jury answered no to the questions of whether

Cortez was armed with a firearm during the commission of counts 1, 2, and 3.

Cortez appeals.

## ANALYSIS

A.    PROSECUTORIAL MISCONDUCT

Cortez argues the State committed prosecutorial misconduct in closing by

engaging in inconsistent arguments. At the suppression hearing, the State argued the

GPS tracking was accurate and common enough that a layperson could reasonably rely

on it. But the GPS tracking once showed Cooper's cellular phone at a location other than

the route taken from Spicer's house and across town from the house at Miller Drive.

6

Cortez argued this in closing. In rebuttal, the State began to tell the jury how GPS worked, and that individual GPS signals sometimes were inaccurate.

To establish prosecutorial misconduct, a defendant has the burden to show that the prosecutor's statements were improper and, as a result, prejudicial. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). For improper statements that were followed by a proper objection, a prosecutor's statements are prejudicial if the statement had a substantial likelihood of affecting the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Reversal is not required if the error could have been obviated by a curative instruction that the defense did not request. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

Cortez contends, without elaboration, that the prejudice is clear. But the accuracy of the GPS tracking was not an issue for the jury. The events of the robbery and the starting location of Spicer's home were corroborated by Cooper. The events at the house at Miller Drive were also corroborated by testimony of other witnesses, as well as the items found by law enforcement at the house. We conclude that the accuracy of the GPS tracking, or arguable lack thereof, did not have a substantial likelihood of affecting the jury's verdict.

B.    SUPPRESSION HEARING

Cortez argues the trial court erred in denying his motion to suppress the evidence seized from the house at Miller Drive. He argues there was no evidence whether the GPS tracking was reliable.

As a threshold issue, this court must determine whether Cortez has standing to challenge the search warrant. The trial court concluded Cortez did have standing.

This court may affirm on any ground supported by the record. *State v. White*, 137 Wn. App. 227, 230, 152 P.3d 364 (2007). "[R]esolution of a motion to suppress requires a two-part inquiry: (1) whether a defendant has standing to challenge the police conduct; and (2) whether the police conduct is contrary to the constitutional protections and guarantees." 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 2402, at 533 (3d ed. 2004). We review conclusions of law following a suppression hearing de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

The United States Supreme Court has held that a guest, present in the home of another, with consent, does not possess a privacy interest in that other's home. *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998). The Fourth Amendment to the United States Constitution protects people, not places, and is a personal right that must be invoked by the individual. *Id.* at 88. As a limited safeguard, courts have developed the doctrine of automatic standing to confer third party standing under certain conditions.

Here, the parties stipulated that Cortez was only a short-term invited guest and did not reside at the subject house. Cortez thus must rely on the doctrine of automatic standing. At the suppression hearing, the State argued, albeit unsuccessfully, Cortez did not have automatic standing.

8

To assert automatic standing, a defendant must be charged with a possessory offense and be in possession of the subject matter at the time of the search or seizure. *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002). In addition to the charges of robbery and burglary, the State charged Cortez with intimidating a witness, witness tampering, and delivery of a controlled substance. It is obvious that robbery, burglary, intimidating a witness, and witness tampering are not possessory offenses. Although less obvious, delivery of a controlled substance is not a possessory offense either. *See State v. DeVries*, 149 Wn.2d 842, 849-50, 72 P.3d 748 (2003) (The elements of delivery of a controlled substance are: (1) delivery of a controlled substance, and (2) knowledge that the substance delivered was a controlled substance.). Also, Cortez was outside the Miller Drive house at the time of the search. Because Cortez cannot establish he has automatic standing, we do not reach the substantive issue he presents.

C. ADMISSION OF THE CALL LOG

Cortez next argues the trial court erred when it admitted a photograph of a call log without proper authentication. Cortez contends Cooper, not Shay, should have been the person to authenticate the photograph.

A trial court's determination of whether evidence has been properly authenticated is reviewed for an abuse of discretion. *In re Det. of H.N.*, 188 Wn. App. 744, 753, 355 P.3d 294 (2015), *review denied*, 185 Wn.2d 1005, 366 P.3d 1244 (2016). An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

9

ER 901(a) requires authentication or identification as a condition precedent to admissibility. *State v. Bradford*, 175 Wn. App. 912, 928, 308 P.3d 736 (2013). This determination is a preliminary question, so the rules of evidence do not apply. *Id.* The court should admit the evidence if there is sufficient proof to permit a reasonable juror to find that something is what it purports to be. *Passovoy v. Nordstrom, Inc.*, 52 Wn. App. 166, 171, 758 P.2d 524 (1988). For example, testimony that the person on the other end of a telephone call identified himself as a specific person is, alone, insufficient. *Id.* However, courts routinely find identity authenticated when self-identification is combined with virtually any circumstantial evidence. *Id.*

Cortez contends Cooper was the best person to authenticate the photograph of his own call log. That may be, but that does not disqualify the State's investigator, Shay, from authenticating the photograph. Here, Shay was the person who took the photograph. Prior to taking it, he asked Cooper to display his call log on his cellular phone. That, combined with the photograph showing Corporal Loera's missed call, was sufficient to properly authenticate the photograph. We determine the trial court did not abuse its discretion when it admitted the photograph of the call log.

D.    SUFFICIENCY OF THE EVIDENCE FOR FIRST DEGREE ROBBERY CONVICTIONS

Cortez contends the evidence was insufficient to convict him of the two first degree robbery charges. Here, the State charged Cortez, as a principal or an accomplice, with first degree robbery under RCW 9A.56.200(1)(a)(i) or (ii). This required the State to prove beyond a reasonable doubt that Cortez or an accomplice was armed with a

10

deadly weapon or displayed what appeared to be a firearm or other deadly weapon.

Cortez makes three arguments that we will address in turn below.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When evaluating the sufficiency of the evidence, the court must determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004). We do not reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). For sufficiency of evidence claims, circumstantial and direct evidence carry equal weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

1.   *Inconsistency of verdicts*

Cortez first contends the evidence was insufficient because the jury's special verdict determined that neither he nor a principal was armed with a firearm when committing the robberies. "Where the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we

11

will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count." *State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988).

Here, the jury was asked in the special verdict forms, "Was the defendant FIDEL * CORTEZ, JR armed with a firearm at the time of the commission of the [robberies]." Clerk's Papers (CP) at 182. Pages earlier, in a somewhat lengthy jury instruction, the jurors were informed, "For purposes of a special verdict . . . [i]f one participant to a crime is armed with a deadly weapon, all accomplices to that participant are deemed to be so armed, even if only one deadly weapon is involved." CP at 164. We note the jury had to wade through 43 separate instructions to arrive at its verdicts. It is likely that the jurors, when answering the robbery special verdict forms, did not recall the one sentence quoted above. That is, by answering no in the special verdict forms, the jurors were merely finding that Cortez, himself, was not armed with a firearm during the commission of the robberies.

Nevertheless, the facts are sufficient for a rational trier of fact to find a firearm was used in the robberies of Spicer and Cooper. Blanco testified he saw one of the accomplices with a gun before the accomplices left the car and went into the duplex. Cooper testified he saw a silver handgun during the robbery. And Officer Ouimette found a silver handgun inside the house at Miller Drive.

2.      *No evidence a firearm was used or displayed*

Cortez also argues there was no evidence that an accomplice used or displayed a firearm. In *State v. Henderson*, 34 Wn. App. 865, 868, 664 P.2d 1291 (1983), we held

12

the purpose of the first degree robbery statute was to "proscribe conduct in the course of a robbery which leads the victim to believe the robber is armed with a deadly weapon, whether the weapon is actually loaded and operable or not, and whether the weapon is real or toy." Here, Cooper testified he saw one of the robbers with a silver handgun "out of the corner of [his] eye." 2 RP at 156. This is sufficient for a rational trier of fact to find beyond a reasonable doubt that an accomplice used or displayed a firearm.

3. *Spicer did not testify any item was taken from him*

Cortez next contends because Spicer did not testify, the evidence was insufficient to establish Spicer was a victim of the robbery. We disagree. Blanco used Spicer's cellular phone but returned it to him prior to the robbery. Spicer was ordered to the ground during the robbery alongside Cooper. Spicer's cellular phone and wallet were found in the house at Miller Drive. This evidence permits a rational trier of fact to have found beyond a reasonable doubt that Spicer was a victim of the robbery.

E. SUFFICIENCY OF EVIDENCE FOR BURGLARY CONVICTION

Cortez argues Spicer did not testify at trial so it was unclear whether the three masked men were licensed or privileged to enter his duplex. Here, the State charged Cortez, as a principal or as an accomplice, with first degree burglary under RCW 9A.52.020. One of the elements the State was required to prove was that an accomplice entered or remained unlawfully in or upon the subject premises. "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed,

13

invited, or otherwise privileged to so enter or remain." Former RCW 9A.52.010(3) (2011).

Circumstantial evidence is entitled to as much weight as direct evidence. *Varga*, 151 Wn.2d at 201. Here, three men with their faces covered with masks or bandanas entered the duplex and yelled at everyone to get down on the floor. There was no evidence that any of the accomplices knocked or rang the doorbell. There was no evidence Spicer answered the door. Instead, he was next to Cooper, near the couch, when the robbers ordered everyone to the ground. But even if Spicer opened the door, it is highly improbable that Spicer invited three masked men into his duplex. Cortez was free to argue that the masked robbers were invited in by Spicer. But the jury was permitted, by circumstantial evidence, to find otherwise.

F.    LIMITATION OF CROSS-EXAMINATION

Cortez next assigns error to the trial court's exclusion of Blanco's criminal information during his cross-examination of Blanco. Cortez contends the confrontation clause allows him to explore the bias Blanco had because Blanco's cooperation with the State was due to a plea deal.

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). Abuse exists when the trial court's exercise of discretion is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *Id.* (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). Relevant evidence may be excluded if "its probative value is

14

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. A trial court's limitation of cross-examination will not be disturbed unless it is the result of manifest abuse of discretion. *Darden*, 145 Wn.2d at 619. "However, the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, credibility, or foundational matters." *Id.*

Under the Sixth Amendment's confrontation clause, an accused has a right to confront the witnesses against him. U.S. CONST. amend. VI; *see also Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). This right, which applies to the states through the Fourteenth Amendment's due process clause, speaks to a defendant's right to cross-examine adverse witnesses. *See Pointer v. Texas*, 380 U.S. 400, 404-05, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). However, the right to cross-examine witnesses is not absolute: "Courts may, within their sound discretion, deny cross-examination if the evidence is vague, argumentative, or speculative." *Darden*, 145 Wn.2d at 620-21. Further, the subject matter of the cross-examination is "limited by general considerations of relevance." *Id.* at 621 (citing ER 401; ER 403).

Our Supreme Court follows a three-pronged approach to determine the limitations of a defendant's confrontation clause right to cross-examination. *Id.* at 622. First, the evidence sought must have at least minimal relevance. *Id.* Second, if relevant, the burden is on the State to show the evidence is "so prejudicial as to disrupt the fairness of

15

the fact-finding process at trial." *Id.* Third, the court must balance the State's interest in excluding prejudicial evidence against the defendant's need for the information. "[O]nly if the State's interest outweighs the defendant's need can otherwise relevant information be withheld." *Id.* Ultimately, restrictions on cross-examination are subject to the trial court's discretion, and this court reviews for abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 752, 202 P.3d 937 (2009).

The trial court did not allow defense to use Blanco's criminal information during cross-examination to ask him how many firearm enhancements he faced. The trial court stated it was not helpful and wasteful of the jury's time. We agree. The State elicited testimony from Blanco that he agreed to cooperate in exchange for receiving a reduced sentence of 2 years instead of a maximum sentence of 22 years. Defense counsel agreed that Blanco testified accurately both to the sentence he received and the maximum sentence he faced.

The criminal information shows charged crimes and the authorizing statutes, but the actual sentences for each charge are not listed. Nor is there any indication of total time potentially faced. Blanco did testify he wanted to cooperate when he saw the gun enhancements, but the document in no way shows what amount of time each enhancement would carry. Nor did the document contain any information about the two-year deal Blanco received instead. At best, the document showed Blanco faced criminal charges and three firearm enhancement stemming from those charges.

16

In light of Blanco's admission of the prison time he faced and the prison time he received, it was not manifestly unreasonable for the trial court to determine that the charging information was vague or not relevant. The information provided no further relevant information. We determine the trial court did not abuse its discretion by excluding Blanco's charging information.

G.    CUMULATIVE ERROR

Cortez argues cumulative error requires reversal of his convictions. Under the cumulative error doctrine, a defendant may be entitled to a new trial when several trial errors cumulatively produced a fundamentally unfair trial. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). Cumulative error may require reversal even if each error standing alone would be considered harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). However, the cumulative error doctrine does not apply here, where Cortez has failed to establish any trial error. *See State v. Saunders*, 120 Wn. App. 800, 826, 86 P.3d 232 (2004).

### STATEMENT OF ADDITIONAL GROUNDS

Cortez argues the trial court erred when it imposed LFOs without first inquiring into his current and future ability to pay them. The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, a $100 DNA[2] collection fee, and a $600 court-appointed attorney fee. Cortez argues, and the State concedes, the court-appointed attorney fee cost should not have been imposed because Cortez hired a private attorney.

---

[2] Deoxyribonucleic acid.

17

Although Cortez contests all LFOs, only the court-appointed attorney fee is a discretionary cost. The victim assessments, DNA fees, and criminal filing fees are mandatory costs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). There is no requirement for courts to conduct an individualized inquiry before imposing mandatory costs.

We accept the State's concession of error and direct the trial court to amend the judgment and sentence to remove the $600 court-appointed attorney fee cost. This amendment, favorable to Cortez, does not require his presence.

Affirm, but strike attorney fee LFO.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

18