
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 74256-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KEBEDE ABAWAJI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: <u>March 6, 2017</u> |

SPEARMAN, C.J. — Mandatory joinder applies only to charges based on the same conduct within the jurisdiction of the same court. CrR 4.3.1. Kebede Abawaji was convicted of attempted murder in the second degree and felony harassment. On appeal, he contests the felony harassment conviction arguing that the trial court erred when it refused to dismiss the charge as a violation of mandatory joinder under CrR 4.3.1. Because mandatory joinder did not apply in this case, we reject this argument. In a statement of additional grounds, Abawaji also contests his conviction of attempted murder in the second degree, but the arguments are without merit. We affirm.

## FACTS

Kebede Abawaji and Tigist Belte married in Ethiopia in 1999. They immigrated to the United States in 2003. The couple had five children together. At some point, the couple separated. After their separation, the couple engaged in disputes over Belte's alleged relationship with another man.

On November 1, 2014, Belte and Abawaji were in her upstairs bedroom. Abawaji was angry and began arguing with Belte. At one point, he grabbed Belte by her neck, threw her onto the bed and choked her. Abawaji told Belte that he was going to kill her. Belte was able to get away and went downstairs. Abawaji followed her. He then went to the kitchen got a large knife and came towards her. Belte fled the home. After the couple's son was able to disarm Abawaji, Belte returned to the house and called 911. Seattle Police Department officers responded. Abawaji was taken into custody and the matter was referred to the Seattle City Attorney's Office.

Based on this incident, Abawaji was charged in Seattle Municipal Court with one count of assault in the fourth degree and one count of unlawful use of a weapon. While the charges were pending, Belte's mother died. Members from their Ethiopian community comforted Belte. They also convinced her to drop the charges against Abawaji. The case against Abawaji proceeded to trial in Seattle Municipal Court but was dismissed with prejudice when Belte did not appear for trial. A short time later, Abawaji and Belte divorced. However, Abawaji remained involved with Belte and the children.

On April 1, 2015, officers responded to a 911 call on the street near Belte's home. Abawaji reported to the 911 operator that he hit his wife in the head with a hammer because she pissed him off. When officers arrived, Abawaji immediately lay on the ground and put his hands behind his back. The officers arrested Abawaji.

Abawaji was charged in King County Superior Court with attempted murder in the first degree and assault in the first degree based on this incident. He was also charged with felony harassment based on Abawaji's alleged threat to kill Belte on November 1, 2014.

Prior to trial, Abawaji moved to dismiss the felony harassment charge. He argued that the harassment charge and the two misdemeanor charges filed in Seattle Municipal Court were "related offenses" as that term is defined in CrR 4.3.1, the mandatory joinder rule.[1] He argued that because the harassment charge was not joined with the misdemeanor charges, under the rule, it must be dismissed.

The State argued that the mandatory joinder rule did not apply because the offenses were not related. In the alternative, the State urged the court to deny the motion because "the ends of justice would be defeated if the motion were granted." CrR 4.3.1(b)(3). The State argued that the exception applied because

---

[1] CrR 4.3.1(b) provides in part:

(1) Two or more offenses are related offenses, for purposes of this rule, if they are within the jurisdiction and venue of the same court and are based on the same conduct.

(2) When a defendant has been charged with two or more related offenses, the timely motion to consolidate them for trial should be granted unless the court determines that because the prosecuting attorney does not have sufficient evidence to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted. A defendant's failure to so move constitutes a waiver of any right of consolidation as to related offenses with which the defendant knew he or she was charged.

(3) A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense . . . . The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

the municipal court charges against Abawaji were dismissed only after Belte succumbed to pressure from community members and did not testify against him.

The trial court appeared to rely on both grounds argued by the State and denied the motion to dismiss.

Following trial, the jury convicted Abawaji of the lesser-included offense of attempted murder in the second degree, assault in the first degree, and felony harassment. The trial court vacated the first degree assault conviction on double jeopardy grounds. Abawaji appeals.

## DISCUSSION

Abawaji claims that the trial court erred when it did not dismiss the felony harassment charge because it violated the mandatory joinder rule. Application of the mandatory joinder rule is a question of law that we review de novo. State v. Kindsvogel, 149 Wn.2d 477, 480, 69 P.3d 870 (2003) (citing State v. Ledenko, 87 Wn. App. 39, 42, 940 P.2d 280 (1997)). We may affirm the trial court on any basis supported by the record. State v. Henderson, 34 Wn. App. 865, 870-71, 664 P.2d 1291 (1983) (citing Pannell v. Thompson, 91 Wn.2d 591, 603, 589 P.2d 1235 (1979)).

The mandatory joinder rule requires that all related offenses be joined, "if they are within the jurisdiction and venue of the same court and are based on the same conduct." CrR 4.3.1(b)(1). Acts committed during a single criminal episode constitute the "same conduct." State v. Gamble, 168 Wn.2d 161, 168, 225 P.3d 973 (2010) (citing State v. Watson, 146 Wn.2d 947, 957, 51 P.3d 66 (2002)). An

4

exception to mandatory joinder exists when application of that rule would defeat "the ends of justice." CrR 4.3.1(b)(3).

Relying on State v. Dixon, 42 Wn. App. 315, 711 P.2d 1046 (1985), Abawaji contends that under CrR 4.3.1(b)(1), the felony harassment charge is related to the charges filed in Seattle Municipal Court. He argues that Dixon "end[ed] the discussion that municipal court and superior court cannot be the same jurisdiction" for purposes of the rule. Brief of Appellant at 11. But Abawaji misreads what was at issue in that case.

In Dixon, we did not consider whether a municipal court and a superior court may be within the same jurisdiction. In that case, the State conceded that a charge brought against the defendant in Seattle District Court was also within the jurisdiction of King County Superior Court. (Emphasis added). Dixon, 42 Wn. App. at 317. The only disputed issues were whether the defendant had waived joinder or whether the rule applied at all because the misdemeanor charges had been dismissed and not tried.

The State argues that the charges at issue in this case are not related because Seattle Municipal Court and King County Superior Court do not share the same jurisdiction. We agree. In State v. Fladebo, 53 Wn. App. 116, 119, 765 P.2d 1310 (1988), the defendant, Kathryn Fladebo, was arrested for driving while intoxicated (DWI). Id. at 117. During the course of her arrest, she was found to be in possession of heroin. Id. Fladebo was charged in Mount Vernon Municipal Court with [DWI] in violation of Mount Vernon Municipal Code 10.04. Id. She was subsequently charged in Skagit County Superior Court with possession of a

controlled substance, a felony, under RCW 69.50.401(d). Id. Relying, in part, on the mandatory joinder rule, Fladebo argued that the felony should have been dismissed because it arose from the same conduct as the DWI. Id. at 118. We rejected the argument, holding that the mandatory joinder rule:

> does not apply to this case because the 'related offenses' must be 'within the jurisdiction and venue of the same court' . . . . CrR 4.3(c)(1) [recodified as CrR 4.3.1(b)(1)]. The Mount Vernon Municipal Court has exclusive jurisdiction over the violation of a Mount Vernon municipal ordinance, the driving while intoxicated charge, but no jurisdiction over the violation of the Washington Criminal Code, the possession charge.

Id. at 118-19.

Similarly, here, Seattle Municipal Court has "exclusive original criminal jurisdiction of all violations of city ordinances . . . ." RCW 3.50.020. Thus, the assault in the fourth degree charge and the unlawful use of a weapon charge, were properly prosecuted in that court. But Seattle Municipal Court has no jurisdiction over the felony harassment charge, because King County Superior Court has original jurisdiction over "all criminal cases amounting to felony . . . ." RCW 2.08.010. We conclude the mandatory joinder rule is inapplicable to this case. The trial court did not err when it denied Abawaji's motion to dismiss on that ground.[2]

Abawaji also asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding remains throughout

---

[2] Because we conclude that the mandatory joinder rule does not apply, we do not reach Abawaji's arguments concerning the ends of justice exception to the mandatory joinder rule.

review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Abawaji was found indigent by the trial court. If the State has evidence indicating that Abawaji's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Statement of Additional Grounds

Abawaji raises seven further challenges in a statement of additional grounds (SAG). First, he asserts that tests were performed on the hammer, but the jury was not provided with the results of those tests. He appears to argue that the State performed testing on the hammer and hid the results from the jury. There is nothing in the record to suggest that the State actually conducted testing on the hammer or even if it did, that the test results would be favorable to Abawaji. Indeed, the State claimed at trial that it did not conduct any such tests because it did not need to in light of Abawaji's admission that he committed the assault. If there is evidence that the hammer was tested with results favorable to Abawaji, it is outside of the record before us and we are thus, unable consider it on direct appeal.

Next, Abawaji asserts that the jury was not provided with his psychological evaluation. He appears to argue that this was error because the evaluation supported his claim that there was no connection between "the alleged weapon and the crime" and "between the alleged weapon and me, the defendant." SAG at 2. The record shows that defense counsel retained Dr. Spizman in preparation

7

for the trial. Dr. Spizman interviewed and prepared a written evaluation of Abawaji. But Dr. Spizman did not testify, and the evaluation was not offered as evidence at trial.[3] But we can discern nothing in the evaluation that supports Abawaji's claim that it contains evidence showing there is no connection between the hammer, the crime, and himself. Accordingly, we reject the argument.

Abawaji also asserts that the State failed to provide an interpreter for one of its witnesses, Mounira Boucenna. He claims that as a result, the State took advantage of her during her testimony causing her to be upset and ask for an interpreter, which prevented her from expressing "what was on her mind." SAG at 3. But the record does not reveal that Boucenna was upset or that she had any particular difficulties during her direct testimony. Nor does it show that Boucenna had testimony favorable to Abawaji that she was unable to give. To the extent such evidence may exist, it is not part of the record on appeal and we cannot consider it.

During cross examination, Boucenna did testify that she had asked for an interpreter but that the request was denied. The exchange took place as follows:

> [Defense]: It's fair to say you did not see what caused Ms. Belte's injuries?
> [Boucenna]: I don't understand with my English. I did ask for interpreter.
> [Defense]: You don't have one?
> [Boucenna]: I did ask for Amharic. They said, "you are asking too much," like that.
> [Defense]: You asked for an interpreter?
> [Boucenna]: Yes
> [Defense]: One wasn't provided?
> [Boucenna]: Yeah, like, last night, yesterday.

---

[3] The evaluation is part of the record because it was attached to defense counsel's presentence report submitted on behalf of Abawaji.

[Defense]: Let me ask my question again. First, tell me if you understand what I'm asking.
[Boucenna]: Okay

Verbatim Report of Proceedings (VRP) (9/30/15) at 489-90.

Boucenna did not appear to have any further difficulty understanding defense counsel's questions. Id. In response to defense counsel's question about whether she saw what caused Belte's injuries, Boucenna stated that she did not. Id. at 490. Because the record gives no indication that Boucenna's proficiency in English prevented her from giving testimony favorable to Abawaji, we reject his claims.

Abawaji next contends that the jury did not have sufficient evidence to prove that he assaulted Belte with the hammer. He argues that the officer who collected the hammer from the scene testified that he did not see "no sight of blood, body tissue, [or] hair" on the hammer, so the jury did not have sufficient evidence to assume the hammer was used during the assault. SAG at 3.

Evidence is sufficient to support a criminal conviction when, viewed in the light most favorable to the State, a reasonable fact finder could have found the necessary elements of the crime beyond a reasonable doubt. State v. Drum, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (citing State v. Wentz, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). Seattle Police Officer McAuliffe, who responded to the scene, testified that he did not notice any blood or tissue on the hammer when he collected it from Abawaji's car. However, Belte testified that Abawaji assaulted her with a hammer. And Abawaji told the 911 operator that he hit Belte with a hammer. Additionally, a hammer was collected from Abawaji's car after he

9

directed police officers where to find it. This evidence is more than sufficient to support the jury's verdict. We reject Abawaji's claim.

Abawaji also asserts that the jury should not have relied on his statement to law enforcement officers because those statements were made in fear due to his cultural background. Abawaji testified he lied to the 911 operator about the hammer to get help to Belte faster. He said that he did not change his story when officers arrived on scene because he did not want officers to assault him. He stated that "in [his] country, police beat you up to death." 2(VRP) (10/05/15)[4] at 91. He stated that he did everything the police wanted because he did not want to get beat. The jury considered his testimony on these issues and rejected it. Because we do not reweigh evidence on appeal, we reject Abawaji's claim.

Next, Abawaji asserts that the jury was not in agreement, the jury was pressured into accepting the verdict, and the trial court erred in not declaring a mistrial. He appears to refer to a discussion that occurred when the trial court polled the jury. Abawaji was charged with attempted murder in the first degree, assault in the first degree, and felony harassment. The jury convicted Abawaji for the lesser-included offense of attempted murder in the second degree, and as charged for the other two offenses.

When the jury was polled after providing a verdict, two jury members were confused on what the clerk was asking. Juror number eleven asked "May I inquire if by that do you mean did I agree on a greater count, but then it was—we

---

[4] There are two Verbatim Report of Proceedings that took place on October 5, 2015, and they have been numbered separately (they both start on page 1). The morning proceedings hereinafter are referred to as 1VRP (10/05/15) and the afternoon proceedings hereinafter are referred to as 2VRP (10/05/15).

couldn't all agree, and so then we all agreed on the lesser count or–I guess I don't understand the question." VRP (10/08/15) at 143. After a sidebar, the question was rephrased to provide clarity for the jurors. The court then asked each juror ". . . is the guilty verdict on Count I, attempted murder in the second degree, your individual verdict?" Id. Both jurors agreed that it was their individual verdict and the verdict of the jury. We reject Abawaji's claims that the jury was not in agreement and was pressured into accepting a guilty verdict.

Finally, Abawaji asserts that testimony concerning the November domestic violence incident was inaccurate or inconsistent. He contends that the State's witnesses testified that he was holding a knife, but in fact, he was holding only a plastic knife. Id. But for purposes of the felony harassment charge, whether the knife was plastic is irrelevant. We reject Abawaji's argument.

Affirmed.

WE CONCUR: